IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

O. DENISE VANDERCOURT,

                Plaintiff,

       v.

ANDREW SAUL, Commissioner of
Social Security,[1]

           Defendant.

Case No. 18-cv-02976-MMC

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT;
DENYING DEFENDANT'S CROSS-
MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 14, 16

Before the Court is plaintiff O. Denise Vandercourt's ("Vandercourt")[2] motion for

summary judgment, filed November 15, 2018, by which Vandercourt seeks review of a

decision issued January 12, 2017, by an administrative law judge ("ALJ"), denying her

claim for Social Security disability insurance benefits. Also before the Court is the cross-

motion for summary judgment, filed January 8, 2019, by defendant, the Commissioner of

Social Security ("Commissioner"). Pursuant to Civil Local Rule 16-5, the motions have

been submitted on the papers without oral argument. Having read and considered the

parties' respective written submissions, the Court rules as follows.

## BACKGROUND

On August 18, 2014, Vandercourt filed an application for Social Security disability

---

[1] Andrew Saul, Commissioner of Social Security, is substituted herein for his
predecessor, Nancy A. Berryhill, who served as Acting Commissioner of Social Security.
See Fed. R. Civ. P. 25(d).

[2] Although documents prepared by plaintiff during proceedings before the Social
Security Administration ("SSA") show her last name is spelled "Vander Court" (see, e.g.,
Cert. Admin. Record ("CAR") 193, 235), the instant order, for consistency with the SSA's
decisions and the docketing of the above-filed appeal, uses the spelling "Vandercourt."

insurance benefits, alleging a period of disability beginning May 26, 2012,[3] based on bilateral carpal tunnel syndrome, bilateral shoulder tendonitis, anxiety, and depression. On March 11, 2015, the SSA denied Vandercourt's application and, on July 14, 2015, denied her request for reconsideration. Subsequently, Vandercourt requested a hearing before an ALJ. On January 9, 2017, the ALJ conducted a hearing, at which Vandercourt, as well as a vocational expert ("VE"), testified. During the hearing, Vandercourt requested a "closed period" of disability ending in "February 2015." (See CAR 38.)

At the hearing, Vandercourt, through her attorney, explained that, during the requested period of disability, she had "return[ed] to work on a part-time basis in October of 2013," started "working full-time as of March of 2014," and "stopped again in October of 2014 because of surgery [for] carpal tunnel syndrome." (See id. 37.) In answering questions about the alleged onset of her disability in May 2012, the circumstances that kept her from working until October 2013, and her subsequent efforts to return to work, Vandercourt described her symptoms, including problems with panic attacks, paranoia, focus, pain, and gripping items with her hands. In addition, prior to the hearing, Vandercourt had described her symptoms in a number of reports, including a "Function Report," dated November 7, 2014, in which she stated her mental and physical conditions affected her ability to remember, concentrate, lift, carry, reach, and use her hands. (See id. 232.)

Following Vandercourt's testimony, the ALJ posed a series of employment hypotheticals to the VE, inquiring about Vandercourt's ability to perform "light" work,[4] with

---

[3] As relevant here, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 42 U.S.C. § 423(d)(1)(A).

[4] The SSA defines "light work" as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a

2

specified restrictions. (See id. 56–60.) In response, the VE testified Vandercourt could no longer perform her past relevant work,[5] given a hypothetical limitation to "simple/routine tasks" or "simple/repetitive work" (see id. 56), but could perform certain "unskilled" jobs (see id.)[6] in the "light" and "sedentary" categories (see id. 56–60).[7] The VE also testified, in response to follow-up questions from Vandercourt's attorney, as to the impact of various additional limitations. (See id. 60–63.)

On January 12, 2017, the ALJ issued her decision, finding, based on the five-step sequential evaluation process set forth in the Code of Federal Regulations,[8] Vandercourt

_____

good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." See 20 C.F.R. § 404.1567(b).

[5] The VE identified as Vandercourt's past relevant work her prior jobs as an "administrative assistant" and "supervisor, personnel clerk" (see CAR 54), which jobs have a Specific Vocational Preparation ("SVP") level of 7 and 6, respectively (see id.), and, consequently, are classified as "skilled" work, see SSR 00–4p, 2000 WL 1898704, at *3 (providing "skilled work corresponds to an SVP of 5–9").

[6] "Unskilled work is work which needs little to no judgment to do simple duties that can be learned on the job in a short period of time." See 20 C.F.R. § 404.1568(a).

[7] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

[8] "The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in 'substantial gainful activity' and considering the severity of the claimant's impairments. If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. If the process continues beyond the third step, the fourth and fifth steps consider the claimant's 'residual functional capacity' in determining whether the claimant can still do past relevant work or make an adjustment to other work." See Garrison v. Colvin, 759 F.3d 995, 1007 (9th Cir. 2014) (quoting Kennedy v. Colvin, 738 F.3d 1172, 1175 (9th Cir. 2013)) (internal citations omitted).

3

was not disabled.  At step one, the ALJ determined Vandercourt had engaged in substantial gainful activity for part of the claimed period.[9]  At step two, the ALJ found Vandercourt had three "severe impairments," namely, "bilateral carpal tunnel syndrome, bilateral shoulder impingement[,] and anxiety."  (See id.)  At step three, the ALJ determined Vandercourt did not have an impairment or combination of impairments that met or equaled a listed impairment.

Before continuing to step four, the ALJ determined Vandercourt's "residual functional capacity" ("RFC")[10] and, in that regard, found Vandercourt could perform, subject to certain limitations, "light work . . . as defined in 20 CFR [§] 404.1567(b)."  (See id. 20, 22 (explaining RFC finding "relates to the time period in which the claimant had the most limitations")).)  At step four, the ALJ, relying on testimony provided by the VE, found Vandercourt was "unable to perform past relevant work."  (See id. 27.)  Lastly, at step five, the ALJ, again relying on the VE's testimony, found that, in light of Vandercourt's "age, education, work experience, and [RFC]," Vandercourt could perform "the requirements of representative occupations such as blending tank tender helper . . . and laminating machine off bearer."  (See id. 28.)  Based thereon, the ALJ denied Vandercourt's application at the fifth step.

Thereafter, Vandercourt requested the Appeals Council ("AC") review the ALJ's decision, and, on March 16, 2018, the AC denied review, explaining it had considered the

---

[9] Ordinarily, a finding at step one that a claimant is engaged in "substantial gainful activity" would result in a finding such claimant is not disabled.  See 20 C.F.R. § 404.1520(a)(4)(i).  Here, however, neither party has addressed, in their filings before the Court, the impact of the ALJ's step-one finding.  Consequently, the Court does not address such finding further herein, except in connection with its discussion of the appropriate remedy.  (See infra Section C.)

[10] RFC is "the most [the claimant] can still do despite [her] limitations."  See 20 C.F.R. § 404.1545(a)(1); see also SSR 96-8p, 1996 WL 374184, at *1 (explaining "[o]rdinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," i.e., "8 hours a day, for 5 days a week, or an equivalent work schedule").

reasons Vandercourt disagreed with such decision and that said reasons "d[id] not provide a basis for changing" it. (See id. 1.)

On May 20, 2018, Vandercourt filed the instant petition for review.

### STANDARD OF REVIEW

"An ALJ's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence." Garrison, 759 F.3d at 1009. "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and . . . resolving ambiguities." Id.

The court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [the ALJ] did not rely." See Garrison, 759 F.3d at 1010. The court must consider "the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion," see Andrews, 53 F.3d at 1039, and "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation," see id. at 1039–40.

"Even when the ALJ commits legal error," the court must "uphold the decision where that error is harmless." See Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation, citation, and alteration omitted). "An error is harmless only if it is inconsequential to the ultimate nondisability determination" or, where the error is based on a lack of specificity, if "the [ALJ's] path may reasonably be discerned." See id. at 494 (internal quotation and citation omitted).

### DISCUSSION

In her motion for summary judgment, Vandercourt contends the ALJ erred in assessing both the medical evidence and her testimony and, consequently, contends the

ALJ's step-five finding that she could perform other work is not supported. The Court discusses below the medical evidence and testimony in turn.

## A.    Medical Evidence

Reviewing courts "'distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians).'" See Garrison, 759 F.3d at 1012 (quoting Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)). In general, "the opinion of a treating physician is . . . entitled to greater weight than that of an examining physician," see id., and "the opinion of an examining physician is entitled to greater weight than that of a non-examining physician," see id.

Vandercourt contends "the ALJ expressly accepted" the medical opinions of Karen Hauer, M.D. ("Dr. Hauer"), her treating physician, and Jenny Forman, Ph.D. ("Dr. Forman"), a clinical psychologist who served as a consultative examiner, "but improperly failed to include critical aspects of these medical opinions in the RFC finding." (See Mot. at 11:15–16.) The Commissioner contends the ALJ "did not entirely adopt any single medical opinion" (see Cross-Mot. at 3:4–5), and that Vandercourt has not established "reversible error" in the ALJ's evaluation of such opinion evidence (see id. at 2:19).

At the outset, the Court notes the parties disagree as to the applicable standard for reviewing an ALJ's decision to reject a medical opinion. Vandercourt contends the ALJ must provide "clear and convincing reasons" to reject the opinion of a treating or examining doctor (see Mot. at 11:16–17), whereas the Commissioner contends the ALJ only has to provide "specific and legitimate reasons" for such rejection (see Cross-Mot. at 3:28). As set forth below, the appropriate standard is dependent upon the other medical opinions in the record.

Where a treating or examining doctor's opinion is "not contradicted by another

doctor, it may be rejected only for 'clear and convincing' reasons."  See Lester, 81 F.3d at 830 (citation omitted).[11]  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."  See Garrison, 759 F.3d at 1012 (internal quotation and citation omitted).  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  Lester, 81 F.3d at 831 (emphasis omitted).

The Court will begin by discussing Dr. Hauer's opinion.

### 1.    Dr. Hauer's Opinion

Vandercourt contends the ALJ failed to include, in the RFC finding, limitations Dr. Hauer identified as to her ability to lift and to use her hands, and provided "no reasons" for rejecting said limitations.  (See Mot. at 10:4.)  The Commissioner responds that the ALJ "explain[ed] why" her RFC finding "best accounted for" the medical opinions of both Dr. Hauer and another physician, L. Pancho, M.D. ("Dr. Pancho") (see Cross-Mot. at 3:12–13), a nonexamining agency consultant who reviewed Vandercourt's medical records.[12]

In a medical source statement dated October 20, 2014, Dr. Hauer diagnosed Vandercourt with "bilateral shoulder impingement" and "bilateral CTS [carpal tunnel

---

[11] Although the Commissioner contends a "clear and convincing" standard for "weighing" medical opinions "is inconsistent with the deferential 'substantial evidence' standard" applicable to review of an ALJ's disability determination (see Cross-Mot. at 3:22–23), he acknowledges the Ninth Circuit has "employed a[] 'clear and convincing reasons standard[]' with respect to rejection of "uncontroverted" medical opinions (see id. at 3:26) (emphasis in original)).

[12] Although the Commissioner also references the opinion of J. Bradus, M.D., another nonexamining agency consultant, the ALJ did not mention such opinion in her decision, and, consequently, the Court does not address it further herein.  See Garrison, 759 F.3d at 1010 (holding court reviews "only the reasons provided by the ALJ").

syndrome]" (see CAR 298) and, inter alia, identified a number of limitations in connection

with said conditions.  In that regard, Dr. Hauer opined Vandercourt could, "in a

competitive work situation," lift and carry 10 pounds "occasionally" and less than 10

pounds "frequently," but could "never" lift and carry 20 pounds.  (See id. 300 (defining

"occasionally" and "frequently," respectively, as "6% to 33%" and "34% to 66%" of an 8-

hour workday).)  Dr. Hauer also found Vandercourt had "significant" limitations as to

handling, fingering, and reaching.  In particular, Dr. Hauer opined, Vandercourt could use

her hands to "grasp, turn[,] [or] twist objects" 20–30% of an 8-hour workday, her fingers

for "fine manipulations" 20% of such time, and her arms for "reaching," which includes

overhead reaching, 20% of such time.  (See id. at 301.)

On June 23, 2015, Dr. Pancho opined, inter alia, Vandercourt could lift and carry

20 pounds "occasionally" and 10 pounds "frequently."  (See id. 94.)  With respect to

"manipulative limitations," Dr. Pancho opined Vandercourt could reach overhead with her

left upper extremity "frequent[ly]" and with her right upper extremity "occ[asionally]" (see

id. 95), could engage in "frequent but not constant handling bilaterally" (see id.), and did

not have any limitations as to "fingering" and "feeling" (see id.).  Notably, each of Dr.

Pancho's assessments was less restrictive than Dr. Hauer's.

The ALJ, having summarized the full opinions of the above-referenced physicians,

gave Dr. Hauer's opinion "great weight because it is consistent with the treatment record"

(see id. 26), and, by contrast, gave Dr. Pancho's opinion "some weight," explaining "[t]he

postural restrictions[13] are appropriate[,] but manipulatives are less restrictive than

warranted given the objective evidence throughout the claimant's treatment record."

(See id.)

Nevertheless, in her RFC determination, the ALJ made a number of findings that

---

[13] The postural category, which includes such activities as climbing, crawling, crouching, and kneeling, does not appear to be at issue here.

conflict or appear to conflict with Dr. Hauer's opinion.  In particular, the ALJ, consistent

with Dr. Pancho's opinion, found Vandercourt could "lift and carry 20 pounds occasionally

and 10 pounds frequently" (<u>see</u> <u>id.</u> 22), and could "frequently reach overhead with her left

arm" and "occasionally reach overhead with her right arm" (<u>see</u> <u>id.</u>).  The limitations as to

lifting and carrying clearly conflict with Dr. Hauer's opinion that Vandercourt could never

lift or carry 20 pounds and could lift and carry 10 pounds only occasionally.  In addition,

the limitations as to reaching with the left arm conflict with Dr. Hauer's opinion that, as to

both arms, Vandercourt could reach only 20% of the time, which is in the middle of the

occasional range, and the limitation as to reaching with the right arm may well conflict

with Dr. Hauer's opinion, as Dr. Pancho did not specify a percentage and 20% is

considerably less than 33%, the top of the range for "occasional" use.

Further, although the ALJ rejected Dr. Pancho's opinion as to Vandercourt's

abilities to handle frequently and finger and feel without limitation,[14] she found

Vandercourt could "occasionally" engage in these activities (<u>see</u> <u>id.</u>), <u>i.e.</u>, up to 33% of

the workday, which finding, although not markedly different from Dr. Hauer's finding that

Vandercourt could use her hands 20–30% of the workday, again appears to be less

restrictive than Dr. Hauer's opinion that Vandercourt could use her fingers only 20% of

the time.

Given the conflicts between the opinions of Dr. Hauer and Dr. Pancho, the ALJ

could reject Dr. Hauer's opinion only by providing "specific and legitimate reasons . . .

supported by substantial evidence."  <u>See</u> <u>Garrison</u>, 759 F.3d at 1012 (internal quotation

and citation omitted).  The ALJ did not, however, offer any explanation for rejecting any of

---

[14] Although reaching, handling, fingering, and feeling are all categorized as "manipulative" limitations (<u>see</u> CAR 95), given that the ALJ's RFC finding is consistent with Dr. Pancho's opinion as to reaching, but not as to handling, fingering, and feeling (<u>see</u> <u>id.</u> 22), the Court understands the ALJ's rejection of Dr. Pancho's opinion as to "manipulatives" (<u>see</u> <u>id.</u> 26) to refer only to Vandercourt's ability to handle, finger, and feel.

the limitations Dr. Hauer identified.  Indeed, she did not explicitly reject any portion of Dr. Hauer's opinion, and, as noted, she expressly accorded said opinion "great weight."  (See CAR 26.)  Moreover, the ALJ could not have relied on Dr. Pancho's opinion alone, as the opinion of a nonexamining physician does not suffice to reject the opinion of a treating physician.  See Lester, 81 F.3d at 831.

Under such circumstances, the Court finds the ALJ erred.  See Garrison, 759 F.3d at 1012 (holding ALJ errs when ALJ does not "explicitly reject" medical opinion or provide "specific, legitimate reasons" for crediting one opinion over another).

Further, such error is not harmless.  First, as noted above, the ALJ found Vandercourt could perform "light work" (see CAR 22), and, based thereon, the ALJ, at step five, identified two jobs that are categorized as "light work," see Dict. of Occ. Titles (4th ed. 1991) ("DOT") § 520.687-066 (blending-tank tender helper); id. § 569.686-046 (laminating-machine offbearer).  The ALJ's finding, however, conflicts with Dr. Hauer's opinion as to Vandercourt's lifting and carrying abilities.  As discussed, light work requires lifting up to 20 pounds at a time and "frequent" lifting or carrying up to 10 pounds, see 20 C.F.R. § 404.1567(b), whereas Dr. Hauer opined Vandercourt could never lift 20 pounds and could only occasionally lift or carry 10 pounds.  Second, the ALJ did not incorporate into her RFC determination any of the specific limitations identified by Dr. Hauer as to handling, fingering, or reaching.

In sum, the Court finds the ALJ erred in not adequately including the limitations Dr. Hauer identified, and that such error was not harmless.

### 2.    Dr. Forman's Opinion

Vandercourt contends the ALJ erred by not including, in her RFC finding, Dr. Forman's assessment that she could perform only "one or two step tasks" (see Mot. at 10:22–23), and argues said restriction is "not consistent with" the "Reasoning Level" of the jobs the ALJ found Vandercourt could perform (see id.at 11:8–9).  The Court agrees.

10

In her "Complete Psychological Evaluation," dated January 29, 2015 (see CAR 368), Dr. Forman diagnosed Vandercourt with "Anxiety Disorder NOS [Not Otherwise Specified]" (see id. 370). In relevant part, Dr. Forman opined Vandercourt's ability to "maintain adequate pace or persistence" was "[u]nimpaired" with respect to the performance of "[o]ne or two step simple repetitive tasks," but "[m]oderately [i]mpaired" with respect to "complex tasks." (See id.)

In her decision, the ALJ gave Dr. Forman's opinion "great weight." (See id. 26 (explaining "Dr. Forman had the opportunity to examine [Vandercourt] [and] administer testing[,] and her opinion is consistent with reported symptoms and [the] record").) In her RFC finding, however, the ALJ merely stated Vandercourt could perform "simple routine tasks" (see id. 22), and did not mention the limitation to one- or two-step tasks.

As Dr. Forman's opinion, with respect to such limitation, appears to be uncontradicted, the Court reviews the ALJ's assessment of said opinion for "clear and convincing" reasons. See Lester, 81 F.3d at 830. As with her rejection of Dr. Hauer's opinion, the ALJ never stated she rejected Dr. Forman's one- or two-step limitation, nor is there anything in her decision that could be construed as an explanation for rejecting such limitation. Accordingly, the Court finds the ALJ erred. See Garrison, 759 F.3d at 1012.

Further, such error is not harmless. First, as Vandercourt points out, a limitation to one- or two-step tasks appears to conflict with the reasoning requirements of the jobs the ALJ found Vandercourt could perform. In particular, both such jobs have a "GED Reasoning Level" of 2, see DOT § 520.687-066 (blending-tank tender helper); id. § 569.686-046 (laminating-machine offbearer), which requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions," see id. app. C § III. By contrast, the one- or two-step limitation appears to accord with GED Reasoning Level 1, the lowest level, which requires the ability to

"[a]pply commonsense understanding to carry out simple one- or two-step instructions." See id.; see also Rounds v. Comm'r, Soc. Sec. Admin., 807 F.3d 996, 1003 (9th Cir. 2015) (finding "an apparent conflict between [claimant's] RFC, which limit[ed] her to performing one- and two-step tasks, and the demands of Level Two reasoning"; noting "[o]nly tasks with more than one or two steps would require 'detailed' instructions").[15]

In addition, no hypothetical was posed to the VE that included the one- or two-step limitation, and the VE was never asked to explain the above-referenced apparent conflict. See Rounds, 807 F.3d at 1003–04 (holding ALJ's "failure to reconcile [the] apparent conflict" between limitation to "one- and two-step tasks" and "the demands of Level Two reasoning" was "not harmless"; remanding for ALJ to "determine whether there is a reasonable explanation to justify relying on the VE's testimony").

In sum, the Court finds the ALJ erred in not adequately including the limitations Dr. Forman identified, and that such error was not harmless.

## B.     Vandercourt's Testimony

Vandercourt argues the ALJ improperly rejected her testimony about her symptoms because the ALJ "[did] not specif[y] which testimony she found not credible and [did] not provide[] clear and convincing reasons" for such rejection.  (See Mot. at 14:5–6.)

The Commissioner responds that the ALJ gave "specific and legitimate reasons" for rejecting Vandercourt's allegations.  (See Cross-Mot. at 5:24.)  In particular, the Commissioner argues, the ALJ properly relied on "activities of daily living" ("ADLs") and "medical-opinion evidence" that "undermined" Vandercourt's claims of disabling

---

[15] The Commissioner's argument that the jobs the ALJ identified "were classified as [SVP] level two jobs" (see Cross-Mot. at 5:7–8), which constitute "unskilled work involv[ing] only simple, not complex[,] duties" (see id. at 5:11–12), misses the mark. Vandercourt's argument is based on the applicable GED Reasoning Level of the positions at issue, not their SVP.

limitations.  (See id. at 6:2, 6:16.)

As the above-referenced arguments reflect, the parties again disagree as to the standard of review.  Under well-established case law, however, where the claimant "has presented evidence of an underlying impairment and the government does not argue that there is evidence of malingering, [the court] review[s] the ALJ's rejection of [the claimant's] testimony for specific, clear and convincing reasons."  See Burrell v. Colvin, 775 F.3d 1133, 1136–37 (9th Cir. 2014) (internal quotation and citation omitted) (noting requirement that ALJ's reasons be "specific" is one "supplementing the 'clear and convincing' standard") (emphasis in original).

### 1.     Vandercourt's Allegations

Vandercourt described her symptoms and activities in various reports and at the hearing before the ALJ.  In that regard, Vandercourt testified she stopped working in 2012 due to "panic attacks" and "carpal tunnel" problems, which, respectively, made her unable to "focus on [her] work" and engage in activities such as writing and keyboarding. (See CAR 40–41.)  She also testified that, thereafter, her problems with anxiety, stress, and paranoia "didn't allow [her] to even go outside" (see id. 40) and that, in light of problems with her "hands" as well, she "couldn't do anything for that year" (see id. 41).

Asked about a "typical day" during the period before she returned to work, Vandercourt testified she had been at home, where she lived with her mother, and "[had]n't really go[ne] out a lot," even to see her doctors, because she felt her former employer "ha[d] people watching."  (See id. 49.)  Further, when asked about her daily activities, Vandercourt explained that "taking care of [herself] was slow because of [her] carpal tunnel" (see id. 50); that "going out" was "challenging" due to her fear and paranoia (see id.), but that, "[a]s time went on, [she] did get better" (see id.); and that she could cook, but that her son helped her with tasks such as lifting pans and stirring.

Additionally, Vandercourt described ongoing difficulties after she returned to work.

For example, in a "Work Activity Report" dated October 13, 2014, Vandercourt stated that, although she had worked "50–60 hours a week" at her prior job, she "struggle[d] to work . . . 28–30 hours" per week at her new job, due to "daily pain with [her] hands or shoulders," and that her anxiety was "worse." (See id. 198). Similarly, in the above-referenced "Function Report," Vandercourt reported problems with "personal care" and other daily activities, including having to dress and bathe "slowly" and needing help with activities such as washing and combing her hair, cooking, and shopping (see id. 228–30); she explained that "[l]ifting and gripping [were] difficult," that she needed "help grabbing things off shelves when shopping or at home," and that, unless she was working or had an appointment, she "would just be at home . . . because [a]ctivities would increase [her] pain" (see id. 228). She also stated she "often" took pain medication for her hands or shoulders after working (see id.), needed to use "[b]races/[s]plints" for her hands "everyday" (see id. 233), and "routinely" needed help from co-workers to perform tasks such as gripping and keyboarding (see id. 46). In addition, Vandercourt testified that, despite such problems, she went from part-time to full-time because she "needed it financially" (see id.), but that, in "push[ing] [her]self," her "hands got worse" and, as a result, she had to have surgery (see id.).

In connection with her RFC determination, the ALJ made the following credibility finding:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(See id. 23–24.) In the same section, the ALJ summarized Vandercourt's allegations as to her symptoms and activities, and concluded her activities "demonstrate[d] that her actual functioning [was] consistent with" (see id. 25) and "supported" (see id. 26) the RFC determination. In that regard, the ALJ found that, "[d]espite her subjective complaints

14

and difficulties, [Vandercourt] has no problem with personal care, can prepare simple meals, do household chores including vacuum[ing] and sweep[ing], watch TV, play with her dogs, [and] spend time with [her] daughter, grandchildren and friends" (see id. 25), and also noted Vandercourt went back to work "part-time in October 2013" and then "increase[ed] her hours to full-time in March 2014" (see id.)  In addition, the ALJ summarized a number of medical records and opinions, and likewise concluded such evidence "supported" her RFC determination (see id. 26).

## 2.    Analysis

As noted, where there is evidence of impairment and no evidence of malingering, a claimant's testimony may only be rejected for specific, clear, and convincing reasons. See Burrell, 775 F.3d at 1136.  Here, the ALJ found Vandercourt has multiple impairments that "could reasonably be expected to cause the alleged symptoms" (see CAR 23), and the Commissioner does not argue there is any evidence of malingering. Accordingly, the Court reviews the ALJ's rejection of Vandercourt's allegations as to the severity of her symptoms for specific, clear, and convincing reasons.[16]

In that regard, "although an adjudicator may find the claimant's allegations of severity to be not credible, the adjudicator must specifically make findings which support this conclusion."  See Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  See Brown-Hunter, 806 F.3d at 493 (internal quotation and citation omitted).  Further, the reviewing court "may not take a general finding . . . and comb the administrative record to find specific

---

[16] The Commissioner's reliance on Tommasetti v. Astrue, 533 F.3d 1035 (9th Cir. 2008), to support his invocation of the "specific and legitimate" reasons standard is wholly misplaced, as the Tommasetti court applied such standard in evaluating an ALJ's rejection of a medical opinion, see id. at 1041, not the ALJ's rejection of the claimant's testimony, to which it applied the "clear and convincing" standard, see id. at 1039.

15

conflicts." See Burrell, 775 F.3d at 1138.

In this instance, as Vandercourt points out, the ALJ did not identify the specific statements she found not credible, nor did she identify particular evidence that undermined such statements. Rather, the ALJ summarized evidence submitted by Vandercourt and various medical sources and found Vandercourt's statements were "not entirely consistent with the medical evidence and other evidence in the record." (See CAR 24.) Although the ALJ states such finding was "for the reasons explained in [her] decision" (see id.), no elaboration is provided beyond the summaries themselves, which are not explanatory, and her reliance on Vandercourt's activities. As set forth below, such "explanation" is inadequate.

First, a general commentary is insufficient to support an adverse credibility finding. See Brown-Hunter, 806 F.3d at 493–94 (finding "legal error" where ALJ failed to "identify specifically" discredited statements or to "link that testimony to the particular parts of the record supporting her non-credibility determination"; explaining "a summary of medical evidence in support of a[n] [RFC] finding is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible") (emphasis omitted).

Second, the ALJ's references to activities she deems "consistent with" her RFC determination are in some instances inaccurate and in others inadequate to support her credibility determination. The Ninth Circuit has acknowledged "two grounds for using daily activities to form the basis of an adverse credibility determination": (1) where the claimant's activities "contradict his other testimony"; and (2) where such activities "meet the threshold for transferable work skills." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). As discussed below, the ALJ's findings do not satisfy either such ground.

As to the first ground, to the extent the ALJ found Vandercourt had "no problem with personal care" and could do chores such as vacuuming and sweeping (see CAR

16

25), the ALJ appears to have relied on activities Vandercourt reported at a medical visit on December 16, 2016, see id. 596 (noting, under "Personal Care" and "Household Chores" categories, respectively, "able to get dressed, no problems showering" and "vacuuming, sweeping"), a visit occurring nearly two years after the claimed period of disability.[17] To the extent the ALJ listed a number of other activities, her finding that Vandercourt could perform them "[d]espite her subjective complaints and difficulties" (see id. 25) is "insufficient to meet [the Ninth Circuit's] requirements of specificity," see Burrell, 775 F.3d at 1138 (internal quotation and citation omitted) (finding error where ALJ "did not elaborate on which daily activities conflicted with which part of [c]laimant's testimony") (emphasis in original).  Moreover, as Vandercourt points out, her engaging in the non-workplace activities listed by the ALJ, i.e., personal care, household chores, preparing simple meals, watching TV, playing with her dogs, and spending time with family and friends, is not inconsistent with her testimony about the difficulties she experienced in performing them, including difficulties with leaving the house, lifting objects, and manipulating objects with her hands.

As to the second ground, it is unclear how such activities, which are largely home-based, are transferable to a work setting, and the ALJ did not provide any explanation in this regard.  See Orn, 495 F.3d at 639; see also Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (holding "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"); see also SSR 96-8p, 1996 WL 374184, at *1 (noting RFC reflects "ability to do sustained work-related physical and mental activities in a work

---

[17] The other exhibits the ALJ cited either do not support the ALJ's findings as to personal care and chores (see Ex. 5E, CAR 228–30 (identifying problems with personal care and chores; see also Ex. 3F:13, CAR 315 (not addressing either issue)), or are too general to support the finding (see Ex. 5F:1, CAR 368 (reporting Vandercourt does "some light chores" and "stated that she is independent of ADL's [sic] but physical limitations limit her abilities")).

United States District Court
Northern District of California

setting on a regular and continuing basis").[18]  While the ALJ noted Vandercourt returned

to work, she did not address Vandercourt's allegations of ongoing problems, her need for

regular help from coworkers, or the fact she stopped working again in October 2014 to

undergo surgery and was not "released to work" until January 26, 2015.  (See id. 552;

see also id. 24.)

Under such circumstances, the Court finds the ALJ erred by failing to adequately

explain her reasons for rejecting Vandercourt's allegations.  Further, such error was not

harmless, as Vandercourt's allegations as to her difficulties leaving the house, as well as

her slowness and need for help with lifting and manipulative tasks, go to the critical

question of her ability to work, and the Court cannot discern from the decision the ALJ's

specific reasons for rejecting those allegations.  See Brown-Hunter, 806 F.3d at 494

(finding error not harmless where ALJ "made only a general credibility finding without

providing any reviewable reasons" for finding claimant's testimony not credible).

## C.    Remedy

Vandercourt requests the Court remand her claim for an award of benefits or, in

the alternative, for further proceedings.  In support of the former, Vandercourt contends

Dr. Hauer's opinion, Dr. Forman's opinion, and her own testimony each establish

"disabling limitations" (see Mot. at 16:2–3, 5) and, consequently, "[i]f [such] evidence is

credited as true, the ALJ would be required to find [her] disabled during the closed period

between 5/26/12 and 2/1/15" (see id. at 16:5–7).

"A remand for an immediate award of benefits is appropriate . . . only in rare

circumstances," see Brown-Hunter, 806 F.3d at 495 (internal quotation and citation

---

[18] The Court does not consider herein purported inconsistencies identified by the Commissioner, e.g., between Vandercourt's reported paranoia and social functioning, or reported concentration issues and mental-status findings, as the ALJ did not rely on any such grounds.  See Burrell, 775 F.3d at 1138 (holding court could not rely on alleged inconsistencies identified by government, as ALJ did not identify those inconsistencies).

omitted), namely, where the following three "requirements" are met: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand," see Garrison, 759 F.3d at 1020. Even if such requirements are met, however, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the reviewing court's] discretion." See Treichler v. Commissioner, 775 F.3d 1090, 1101–02 (9th Cir. 2014) (internal quotation and citation omitted).

As to the initial requirement, the Court notes "[a]dministrative proceedings are generally useful where the record has [not] been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence . . . may well prove enlightening in light of the passage of time." See id. at 1101 (alteration in original; internal quotations and citations omitted). A reviewing court must assess "whether there are outstanding issues requiring resolution before considering whether to hold that the claimant's testimony is credible as a matter of law." See Brown-Hunter, 806 F.3d at 495 (emphasis in original; internal quotation and citation omitted) (explaining "[t]he touchstone for an award of benefits is the existence of a disability, not the agency's legal error").

Here, the Court has considered the areas of evidence on which Vandercourt relies for an immediate award of benefits, and although, as discussed above, the Court has identified a number of errors, the Court, as set forth below, does not find further proceedings "would serve no useful purpose." See Garrison, 759 F.3d at 1020.

First, although, as discussed above, the restrictions Dr. Hauer identified conflict with the ALJ's finding that Vandercourt could perform light work, such restrictions may be compatible with work other than light work. In that regard, the Court notes the VE, in response to a hypothetical in which a restriction to lifting no more than 10 pounds was

19

added and "occasional" was defined as no more "than 20 percent" (see CAR 60),

identified "surveillance system monitor" as a job that could be performed under both such

circumstances (see id. 60–61.) Next, as the VE was not given a hypothetical that

included Dr. Forman's "[o]ne[-] or two[-]step" limitation (see id. 370), it is unclear from the

record what, if any, jobs would be compatible with such limitation. To the extent

Vandercourt may be contending she cannot, due to her mental state, do any work at all, it

is unclear from the record the degree to which Vandercourt's problems with anxiety,

stress, and paranoia precluded her from engaging in activities outside her home. (See,

e.g., id. 50 (testifying "going out" was "challenging," but, "[a]s time went on, I did get

better"; id. 230–32 (reporting, "I really don't like to go out anymore"; explaining "I often

feel like people are against me," but also reporting returning to work, going out alone, and

shopping in stores).)[19]

Lastly, as noted above, the ALJ made a finding, at step one, that Vandercourt had

engaged in SGA following her alleged onset date, May 26, 2012. In that regard, the ALJ

found Vandercourt "worked after" such date and, in particular, had engaged in SGA

"since March 2014" (see id. 20), which is when Vandercourt returned to work full-time for

a period ending in October 2014. Notably, although Vandercourt contends the above-

referenced opinions and testimonial evidence establish her disability during the requested

closed period, she has not challenged the ALJ's step-one finding, which applies to a

portion of that period, and neither of the parties has addressed the impact of said finding.

---

[19] The Court notes Vandercourt, relying on Rule 201.14 of the Medical-Vocational Guidelines, contends that, in light of her age, her educational level, and the ALJ's finding she could no longer do her past relevant work, "a limitation to sedentary work would have meant [she] would be deemed disabled." (See Mot. at 14:21–25). As it does not appear such basis was either raised before the ALJ (see CAR 32–66 (transcript of hearing); id. 270–74 (pre-hearing memorandum)) or AC (see id. 274–78) (arguments in support of request for review), the Court will not address it herein in the first instance. See Brown-Hunter, 806 F.3d at 492 (emphasizing "the decision on disability rests with the ALJ . . . in the first instance, not with a district court") (internal quotation and citation omitted).

Accordingly, for all of the above reasons, the Court finds it appropriate to remand for further proceedings.

## CONCLUSION

Vandercourt's motion for summary judgment is hereby GRANTED, the Commissioner's cross-motion for summary judgment is hereby DENIED, and the action is hereby REMANDED, under sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this order.

**IT IS SO ORDERED.**

Dated: November 7, 2019

MAXINE M. CHESNEY
United States District Judge